NUA KONE of Pavaiai, Applicant

v.

LEOMITI of Pavaiai, and
U. GALOIA of Pavaiai, Objectors

# No. 130-1963

# High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Alaoi'a" in Pavaiai]

# October 16, 1963

Apelu, Counsel for Nua Kone.
Moeitai, Counsel for Leomiti.
Lolo, Counsel for Galoia.

OPINION OF THE COURT

ROEL, *Associate Justice*.

Came on to be heard the above entitled and numbered cause wherein Applicant, Nua Kone, filed an application with the Office of Registrar of Titles of American Samoa to register a certain surveyed parcel of land called Fatutupu, containing 1.9324 acres, more or less, as the individually-

owned land of the Applicant, Nua Kone. Upon notice of the proposed registration of the land, objections were filed by Leomiti on behalf of the Leomiti Family and by Galoia on behalf of the Galoia Family.

Applicant Nua Kone sought to register the land in question as his own individually-owned land. Leomiti objected to the registration of the land as surveyed on the ground that part of the Leomiti communal family land was included in the survey. Galoia objected on the ground that the land as surveyed was the communal land of the Galoia Family and not the individually-owned land of the Applicant. According to the plat, the land contains 1.9324 acres, more or less, situated in Tualauta County, Tutuila, American Samoa. Galoia and Leomiti further claimed that the land offered for registration was not Fatutupu but Alaoi'a.

Previous to the time of trial, all three judges viewed the land in question in the presence of all the parties and other witnesses.

Apelu, counsel for Nua Kone, suggested three different reasons why the land Fatutupu, within the survey, was the individually-owned land of Nua Kone. (1) He suggested that Nua obtained the land as an outright gift from Pona, daughter of the last matai, Galoia, and wife of Etuati, in return for the kindness of Nua Kone to her; (2) That Nua Kone had bought the land in question from Pona in payment for the pigs and fine mats Nua gave her; and (3) That Nua Kone was entitled to the land by virtue of adverse possession, having lived thereon continuously for 29 years.

The applicant, Nua Kone, testified he was a resident of Pavaiai where he has lived on the land in question since 1935. Later on, on cross-examination, Nua testified he had gone to Pavaiai in 1930. Nua stated that the land he claimed to own individually amounted to about 1½ acres. He testified that within the period of 32 days—from July 9, 1934 to August 10, 1934—while he was serving the Toilolo title,

he gave Pona, daughter of the deceased Galoia, a total of 13 pigs, four fine mats and some taro. He at first stated he had given all these things to Pona out of love and kindness because Pona had asked him for them, without seeking any reward or compensation for himself. Nua then stated that on the fourth occasion when Pona asked him for one pig and two fine mats, he asked Pona how he was going to be repaid for these gifts and that Pona had offered to give him and his wife a piece of land which belonged to Pona's father, Tasi, then deceased, after which Pona and her husband, Etuati, and Nua walked around the land to mark the boundaries of the land.

Nua testified that there was no holder of the title Galoia at the time. He stated Pona asked for things even though she had her own husband. He claimed Pona gave him the land on August 10, 1934, because he was kind to her. Prior to moving to the land in question, Nua said he was living with the Toilolo Family. Nua testified that he had no blood or family relationship with either Pona or the Galoia Family. He further stated that four years after he moved into the land he did not know who was Pona's matai. Nua testified there were a lot of witnesses still living in Pavaiai to the fact that he had given Pona all the gifts in return for the land, but that none of them wished to come and testify when he asked them to do so. He testified that his wife who died in 1950 and that his grandson who died in 1956 were both buried in the land in question. When Nua was asked by Lolo how many pigs he had given to Toilolo, the title he was serving, during the 32-day period he gave Pona 13 pigs, Nua failed to give a satisfactory answer.

Nua Kone testified that when he came to live on the land in question it was virgin bush. He further stated that in a period of about four months he cut down the big trees with only the help of his wife and cleared the bush, and within that same time built a house and planted breadfruit, coco-

407

nuts, bananas, lemons, avocados and taros. Nua Kone testified that no one in the Galoia Family objected to his cultivation of the land. He stated he sold some of the produce of his trees at the market and that he sold copra to the Government. Nua testified that he had built seven Samoan fales and one palagi house since he has been on the land in question without any objection from anyone.

On cross-examination, Nua testified that Leomiti owned the land to the west of the tract of land in question. Nua Kone admitted there were already some coconut trees planted by Leomiti on the land when he, Nua, first got there. With regard to the boundary between Leomiti land and the land in the survey, Nua testified the old Leomiti and he had agreed to the boundary and that the survey did not include any land belonging to Leomiti. Kone further testified that in 1934 there was a pig wall on the land in question where the pigs belonging to the whole village of Pavaiai were kept. He further stated that the pastor was living immediately to the east of the land in question when he, Nua, first moved into the land.

Nua Kone testified he was not presently living under the matai system and had not lived under the matai system since Toilolo's death in 1958. When asked if he was serving the Toilolo monotaga, he answered no and explained that he, Nua, himself was also a matai and had his monotaga. On cross-examination from Lolo, Nua testified he had answered too quickly about not living under the matai system. He also explained that his title Nua belonged to Upolu and was not registered in American Samoa. When Lolo suggested that Pona had no right to give the land of the family as the individually-owned land to Nua, Nua answered that he did not know. On re-direct questioning from his counsel, Apelu, Nua testified that maybe Toilolo had died in 1961 instead of 1958.

Apelu called Nua back on the stand after Leomiti and Galoia had finished putting on their case. In answer to Apelu's question as to whether he had filed a war damage claim on the land in question, Nua said he had, but he gave no testimony as to whether he was paid for the claim and, if so, what amount. Nua further testified that he had removed the pig fence in 1932; that he had chased away one Vailolo who wanted to plant cocoa; and that just a few days ago he had taken away some breadfruit from a 10-year-old girl who had taken it from the land in question. In answering a question from Lolo, Nua admitted that he had not torn down the pig fence but merely moved it back and then rebuilt it. There was nothing in Nua's testimony to contradict the evidence that the land in question is named Alaoi'a and not Fatutupu.

The case for Leomiti was handled very briefly and clearly by his counsel, Moeitai. Leomiti testified that part of the communal land of the Leomiti Family was included in the survey offered for registration. Leomiti estimated that a strip of land three to four yards wide by the depth of the whole survey on the western side belonged to the Leomiti Family. Leomiti testified he had lived in Pavaiai since 1934 and that Nua started living on the land in question about 14 years ago, and that before that time Nua was living with the Toilolo Family. Leomiti testified that the name of the land in question was not Fatutupu but Alaoi'a, and that the Galoia Family was using the land in question before Nua arrived there, especially Etuati, Pona's husband who had planted some coconuts on the land before Nua came. Leomiti also testified that the land in question was used to keep and raise pigs for the whole village of Pavaiai and that the land in question, except for the small part belonging to the Leomiti Family, was the communal land of the Galoia Family and not Nua's land. Leomiti testified that he knew nothing of the alleged agreement between the old Leomiti and

409

Nua, as stated by Nua, and that he, Leomiti, had objected to the inclusion of his land in the survey and had told both Nua and the surveyor not to include his land, but that the surveyor would not listen to him and had included the Leomiti land in the survey anyway. Leomiti stated that some coconut trees mark the boundary between Leomiti land and the Galoia land included in the survey. He testified he has held the Leomiti title for seven or eight years.

Moeitai, counsel for Leomiti, asked only three or four questions from her client on direct examination and waived her right to rebut other counsel. In response to counsel's questions, Leomiti testified that the land in question was named Alaoi'a and not Fatutupu; that the greatest part of the land in question belonged to the Galoia Family; and that the survey included a small portion of Leomiti communal family land.

Objector Galoia testified that he had lived in Pavaiai since January 1935 when he married one of Pona's daughters, and that he has personally held the title Galoia since 1940 under the name Galoia Upuese. Galoia testified that the land in question and within the survey is the communal land of the Galoia Family. He testified that the land had been used and cultivated by members of the Galoia Family before Pona, daughter of the deceased Galoia, assigned the land to Nua and his wife, Faaolo, to live on, after they had been kicked out of the Toilolo Family. He testified that the land was not given outright to Nua as his individually-owned land, but only to live on. Galoia testified that the first time he had seen Nua on the land in question was in December of 1935. He said Pona allowed Nua and his wife to live on the land because she felt sorry for them. Galoia stated that the land included in the survey was named Alaoi'a and not Fatutupu. Galoia testified he refused to let the surveyor survey the land the first time he went out there and told him that the land was Galoia land. Galoia testified that Faaolo,

wife of Nua, was the daughter of Toilolo, from which family Nua had been kicked out. He further testified that Pona had died in 1949. Another reason given as to why Pona allowed Nua and his wife to live on the land was because there was some sort of relationship between the Galoia and Toilolo families through the Nua matais.

Galoia testified that when Nua came the land in question was not virgin bush; that it was already cleared and planted with coconut, banana and breadfruit trees. He stated that the trees were planted by Etuati, Pona's husband, and by Taai, Pona's father. He testified there was a big pig fence to keep pigs for the whole village of Pavaiai. Galoia testified Nua also planted trees on the land, but did not clear the land from the bush. Galoia stated that by the time Nua went to live on the land in question there was already a road to Leone adjacent to the south of the land in question. Galoia testified that even if Pona had wanted to, she had no authority to give communal family land to anybody as their individually-owned land. Pona was not the matai, but only the daughter of the last Galoia whose title was still vacant, and she only acted as the family mother.

Galoia testified that Pona had told him that Nua had only given her one sow and two small pigs. Galoia admitted that the survey included a small portion of Leomiti land, maybe about three feet wide. Galoia testified that he had not tried to evict Nua because he respected Pona's wishes in allowing Nua and his wife to live on the land, but that he felt it was his obligation as the head of the Galoia Family to object to the registration of the land by Nua because he had to protect the land for the benefit of the Galoia Family.

■ Lolo, counsel for Galoia, introduced an instrument purporting to arrest the statute of limitations, pursuant to Section 907(2) of the Code of American Samoa, in connection with acquiring title to land by adverse possession.

411

Apelu, counsel for Nua Kone, objected to the introduction of the exhibit as evidence. After searching the records of the Clerk of the High Court, the Court ascertained that the original of said instrument was officially filed in the records of the Clerk of the High Court of American Samoa on January 17, 1949. After being advised of the recording of said instrument, counsel for Nua withdrew his objection. The Court admitted the instrument into evidence as Exhibit 1; it reads as follows:

"PAVAIA'I VILLAGE, TUTUILA

American Samoa

7 January 1949

'To: THE HIGH COURT OF AMERICAN SAMOA

"Subj: Arresting of running of statute of limitation.

"1. Pursuant to Section 907, parenthesis (2) of the Code of the Government of American Samoa, I hereby state in writing that I in my capacity as matai of the GALOIA FAMILY, am owner and claim title to the land 'ALAOI'I' in the village of Pavaia'i, Western District, Tutuila, American Samoa. This writing is filed for the purposes of arresting the running of the statutory period governing acquisition of title by adverse possession.

"2. Kone and wife Faaolo with their three (3) children of Pavaia'i were permitted by Pona (mother of my wife) and all other members of the Galoia family as the title was then vacant that time, to live on this land and to plant their plantations thereon. Permission was given these people in the year 1935.

/s/ Galoia U.
GALOIA U.

"Witnesses:
/s/ Ekuati
/s/ Monotui
/s/ Fogafoga"

When Apelu, counsel for Nua, asked Galoia on cross-examination if he had told Pona about filing the instrument to arrest the statute of limitations as against Nua, Galoia

412

said he had and that Pona had answered, "Very good, go ahead and do it." When Apelu asked Galoia if Pona were living would she object to the registration of the land by Nua, Galoia answered that Pona would have probably evicted Nua for trying to register the land.

Etuati was called as a witness for Galoia. He testified he was the husband of Pona; that he had planted some coconut and breadfruit trees on the land in question before Nua came into the land. Etuati testified that Pona had not given the land outright to Nua, but had merely given Nua and his wife permission to live on the land. Etuati also testified that the land within the survey was called Alaoi'a and not Fatutupu. In answer to a question from counsel for Nua, Etuati stated only that he had walked the land to show Nua where he was to live, after he was asked to do so by his wife, Pona. Etuati testified he had seen Nua plant trees on the land in question after he moved in, but that the land was cleared before Nua came. Etuati testified that part of the Leomiti land was included in the survey, but that the greatest part of the land in question was Galoia communal family land.

In his closing argument Apelu, counsel for Nua, stated that the testimonies of all three parties to the case were confusing. Apelu asked the Court to ignore Leomiti's testimony when it conflicted with his client's interests. He stated that Nua was exercising ownership of the land as against Leomiti when he, Nua, took the breadfruit away from the 10-year-old girl and sent her home. Apelu argued that Nua had been on the land in question since 1935 and that Galoia had admitted that Nua had been living on the land for 29 years by authority of Pona; that the oral authority of Pona giving the land to Nua amounted to a transfer of title to the land in Nua's favor. Apelu at first argued that Pona had received a sow and some little pigs in return for the land and later stated that Nua had given Pona all the pigs and fine mats because of love, without expecting any payment in return.

413

He then argued that Nua had asked Pona how she was going to repay his, Nua's, kindness and that Pona offered Nua the land.

Apelu argued that the land was virgin bush when Nua first moved in; that Nua had cultivated the land and built houses thereon without objection. Apelu argued that Nua did not deny Etuati had planted coconuts on the land in question before Nua came in, but that Nua had planted all the rest of the trees. He further argued that Nua had built seven Samoan fales and one palagi house, and that the graves of his wife and grandson were on the land in question; that Nua had used and sold the fruits of his plantation and filed a claim on the land after the war; that Nua had exercised ownership of the land by chasing Galoia and Leomiti people off it.

Apelu argued that aside from claiming the land in question as his own by virtue of the transfer from Pona to him, Nua was also claiming the land by adverse possession by virtue of having held the land openly, notoriously, continuously and in a hostile manner as against everyone. Commenting on the instrument filed by Galoia on January 17, 1949 in the High Court of American Samoa seeking to arrest the statute of limitations pursuant to Section 907(2) of the Code of American Samoa, Apelu argued that said instrument gave "color of title" to the land in question in Galoia's favor. Apelu claimed that Pona would never have filed such an instrument, that Galoia had rejected the authority of Pona by filing it, and that Pona's signature did not appear on the instrument, Objector Galoia's Exhibit No. 1. Apelu claimed that all of Galoia's testimony was hearsay and should not be considered. Lastly, Apelu argued that Nua's aiga were from Western Samoa; that Nua had been on the land 29 years, had been an excellent citizen of Pavaiai and had never returned to Western Samoa; that Nua had spent many years cultivating the land and that if

ejected or evicted Nua would not know where to go although Nua's wife had relatives in Leone.

Moeitai's argument on behalf of Leomiti was classic for its brevity and clarity. She stated she did not want to argue either against Galoia or Nua Kone, but was merely interested in securing for the Leomiti Family the land within the survey which belonged to the Leomiti Family. She argued that whereas Nua claimed there was no Leomiti land within the survey, nevertheless Galoia, who is the present holder of the Galoia title and who owns the land in question, admitted that the survey contained a part of Leomiti's land. Moeitai also pointed out that Etuati, Pona's husband, had testified that a part of the land within the survey was Leomiti Family land.

In arguing on behalf of Galoia, Lolo first attacked the contention that Nua owned the land in question by virtue of adverse possession. Lolo pointed out that by filing the original of Exhibit No. 1, Galoia had successfully arrested the possibility of adverse possession by anyone and specifically as against Nua Kone and his wife. He argued that Pona's signature on the instrument was not necessary since Galoia was the holder of the Galoia title at the time the instrument was filed.

Lolo further argued that even if Pona had meant to convey the land outright to Nua, she could not have done it since no member of the family has the right to give away land belonging to the family or to sell it without the permission of the entire family. Lolo argued that Pona had the right to allow people to live on the land but not to give the land to Nua, who was not even a member of the family.

Lolo argued that Nua's testimony that the land was virgin bush when he went there in 1935 was ridiculous. He stated that the land in question was blocked in on the west by Leomiti's cleared land and on the east by the pastor's land, which was also cleared, and on the south by the high-

415

way going to Leone; that the land could not have been virgin bush. Lolo argued that the testimony indicated that Etuati, husband of Pona, and Taai, Pona's father, had worked on the land in question before Nua Kone came there. Lolo argued that Nua had not destroyed the pig wall but merely moved it. He stated that the only reason Pona had allowed Nua and his wife to live on the land was because they had been kicked out of the Toilolo Family of which Nua's wife was a member.

Lolo argued that Nua's testimony that he had given Pona 13 pigs during a 32-day period was not true; that nobody in American Samoa could give pigs out free at that rate. Lolo contended that Nua contradicted himself when he claimed he gave Pona the pigs out of love and then testifying that he had asked Pona how she was going to repay his kindness. Lolo argued that the only acts of adverse possession testified to by Nua was his chasing of Vailolo and his taking away some breadfruit from a 10-year-old girl two days before the trial of this case, and he questioned Nua's personal character in doing the last act.

After considering the testimony and the evidence, including Exhibit No. 1 introduced by Galoia, and the argument of counsel, the Court is of the unanimous opinion that Nua Kone failed to prove the necessary ownership of the land in question either by outright gift, purchase, or adverse possession to entitle him to register the land in question as his individually-owned land. We believe that Nua Kone and his wife, Faaolo, went to live in the land in question around the year 1935 by virtue of permission granted to them by Pona after they were evicted or chased out from the Toilolo Family. There was no intention on the part of Pona either to give outright as a gift or to sell in exchange for pigs and mats the land in question to Nua Kone. Nua Kone and his wife were merely given a license to live on Galoia Family land. Even if she had wanted to—and we

believe the contrary—Pona had no power or authority to transfer Galoia Family land in fee simple to anyone, especially to one not a family member.

 Nua Kone's contention that he acquired the land in question by virtue of adverse possession must be disallowed. We believe that Nua Kone lived on the land in question since 1935 at the sufferance of Pona and the Galoia Family and not by actual, open, notorious, hostile, exclusive and continuous possession. Even if Nua Kone had proven all the elements of adverse possession, his claim would fail by the filing of Exhibit No. 1 by Galoia in accordance with Section 907(2) of the Code of American Samoa which reads: "2. Any person claiming title to land in the occupation of another person may state in writing such claim and file the same in the High Court of American Samoa; and such claim when filed, shall be deemed an arrest of the statutory period governing acquisition of title by adverse possession; which period shall be 20 years."

 The Court is further of the unanimous opinion that the Leomiti Family owns a small portion of the land within the survey, more particularly described as a strip of land four feet wide to the east from the starting point of the survey and extending to a depth of 50 feet north.

 The Court is of the unanimous opinion that all the land included in the survey, except that portion assigned to the Leomiti Family as aforesaid, is the communal land of the Galoia Family.

 The Court is of the unanimous opinion that the land in question, as set out in the survey, is named Alaoi'a and not Fatutupu.

 This Court is not ordering the registration of the land in the survey. Each interested party—Galoia and Leomiti—must survey, by metes and bounds, his own individual part of the land which he claims (in accordance with

the findings of the Court) if he desires to make application for registration of said land. (Sec. 10.0112, CAS, 1961.)

In conclusion, it is the unanimous decision of this Court and it is hereby ORDERED, ADJUDGED, AND DE-CREED by the Court as follows:

1. That the application filed by Nua Kone to register the land in question, consisting of 1.9324 acres, as reflected in the survey, as the individually-owned land of Nua Kone be and the same is hereby denied.

2. That the Leomiti Family own as communal land a strip of land four feet wide measuring from the starting point of the survey to the east, and extending to a depth of 50 feet north therefrom, for a total area of 200 square feet.

3. That all the land included in the survey, except for the 200 square feet above assigned to the Leomiti Family, is the communal land of the Galoia Family.

4. That the land included in the survey is named Alaoi'a and not Fatutupu.

5. Court costs in the amount of $25.00 are to be paid by Nua Kone within 30 days.